# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>NATIONAL READY MIXED CONCRETE COMPANY, a California corporation,<br><br>        Defendant. | Case No.: CV 18–1122–DMG (KSx) ✓<br>Case No.: CV 18–1125–DMG (KSx)<br><br>**CONSENT DECREE [23]** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper )"Plaintiff" or "Waterkeeper"( and Defendant National Ready Mixed Concrete Company )"Defendant" or "National"(. The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

WHEREAS, Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

-1-

WHEREAS, Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal surface and ground waters of Los Angeles County from all sources of pollution and degradation;

WHEREAS, National is the owner and/or operator of a concrete batch plant located at 4549 Brazil Street, Los Angeles, California 90039 (the "Brazil Street Facility"(;

WHEREAS, National is the owner and/or operator of a concrete batch plant located at 4988 Firestone Boulevard, South Gate, California 90280 (the "Firestone Boulevard Facility"(;

WHEREAS, the Brazil Street Facility and the Firestone Boulevard Facility are referred to collectively as the "Facilities";

WHEREAS, Waterkeeper has approximately 3,000 members who live and/or recreate in and around the Los Angeles area waterbodies receiving discharges from the Facilities, including the Los Angeles River, Los Angeles River Estuary, Los Angeles/Long Beach Harbor, San Pedro Bay, and the Pacific Ocean;

WHEREAS, discharges from the Facilities are regulated by the National Pollutant Discharge Elimination System )"NPDES"( General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ )"Storm Water Permit"( and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. )"Clean Water Act" or "CWA"(, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, Waterkeeper contends that Defendant's operations at the Facilities result in discharges of pollutants into waters of the United States and contends that those discharges are regulated by the Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, on December 7, 2017, Waterkeeper sent Defendant, the registered agent of Defendant, the United States Environmental Protection Agency )"EPA"(, EPA Region IX, the State Water Resources Control Board )"State Board"(, and the Los

Angeles Regional Water Quality Control Board )"Regional Board"( a notice of intent to file suit )"Notice Letters"( under Section 505(b)(1)(a) of the of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Clean Water Act and the Storm Water Permit, Water Quality Order No. 92-12-DWQ, as amended by Water Quality Order 97-03-DWQ, and as amended by Water Quality Order 2014-0057-DWQ, at the Facilities;

WHEREAS, on February 9, 2018, Waterkeeper filed a complaint against Defendant alleging violations at the Brazil Street Facility in the United States District Court, Central District of California, Civil Case No. 2:18–cv–01122–DMG–KSx )"Brazil Street Facility Complaint"(;

WHEREAS, on February 9, 2018, Waterkeeper filed a complaint against Defendant alleging violations at the Firestone Boulevard Facility in the United States District Court, Central District of California, Civil Case No. 2:18–cv–01125–DMG–KSx )"Firestone Boulevard Facility Complaint"(;

WHEREAS, Waterkeeper alleges Defendant to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the Facilities;

WHEREAS, Defendant denies all allegations in the Notice Letters, the Brazil Street Facility Complaint, and the Firestone Boulevard Facility Complaint;

WHEREAS, Waterkeeper and Defendant have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaints without further proceedings;

WHEREAS, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.     Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facilities are located within this District;

3.     The Complaints state claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.     Plaintiff has standing to bring this action;

5.     The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

I.     OBJECTIVES

6.     It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. § 1251 *et seq*., and to resolve those issues alleged by Waterkeeper in its Complaints.

7.     In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act.

II.     AGENCY REVIEW AND TERM OF CONSENT DECREE

8.     Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies"( within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

-4-

9.     The term "Effective Date" as used in this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the forty-fifth (45th) day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, whichever occurs earlier.

10.     This Consent Decree shall terminate thirty (30) months (2 ½ years) from the Effective Date (the "Termination Date"(, unless there is an ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree. In the absence of such an ongoing, unresolved dispute, this Consent Decree shall terminate on the Termination Date.

III.     COMMITMENTS OF THE SETTLING PARTIES

A.     Storm Water Pollution Control Best Management Practices.

11.     Non-Storm Water Discharges: As of the Effective Date, Defendant shall develop and implement Best Management Practices ("BMPs") designed to eliminate all unauthorized non-storm water discharges at the Facilities. Any non-storm water discharges from the Facilities not authorized by the Storm Water Permit or other NPDES permit shall be considered a breach of this Consent Decree.

12.     Current and Additional Best Management Practices: In addition to maintaining the current structural and non-structural BMPs described in the Facilities' Storm Water Pollution Prevention Plan )"SWPPP"(, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable )"BAT"( and the Best Conventional Treatment Technology )"BCT"(. In addition, the Storm Water Permit Receiving Water Limitations require that discharges from the Facilities "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement BMPs

necessary to comply with the Storm Water Permit requirement to achieve compliance with BAT/BCT standards, with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facilities in compliance with this Consent Decree.

13. Structural and Non-Structural BMPs for Brazil Street Facility: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Brazil Street Facility:

a. Sweeping. Institute a daily sweeping program using a wet/dry vacuum sweeper covering all exterior areas of the Brazil Street Facility exposed to rainfall or runoff and accessible to the sweeper. To document compliance with this paragraph, Defendant shall institute a sweeping route map indicating route(s) that are intended to be followed during daily sweepings, record the length of time of sweeper operation, and shall provide these records to Plaintiff within fourteen (14) days of receipt of a written request.

b. Vehicle Maintenance. Defendant agrees to conduct all vehicle and equipment maintenance inside the Maintenance Shop.

i. Exception. For maintenance of any vehicles and/or equipment that do not physically fit inside the Maintenance Shop, Defendant agrees to conduct such maintenance (1) only during days without any precipitation; and (2) in a contained area i.e. where any non-storm water flow will be captured by secondary containment.

c. Vehicle Fueling. Any outdoor vehicle fueling will be conducted in a covered or contained area, i.e., an area where any storm water runoff or non-storm water flow will be captured with secondary containment.

d. Vehicle Storage. Place drip mats beneath trucks and other Brazil Street Facility equipment likely to spill or leak while such equipment is not under cover and is idle for more than one hour. During or immediately before a storm event, drip mats shall be placed beneath trucks and other Brazil Street Facility equipment likely to spill or

leak that are either not under cover or are idle for more than one hour.

      e.    <u>Source Controls</u>. With the exception of trucks or equipment that are impracticable to tarp, Defendant shall develop and implement a plan to use and inspect tarps to cover outdoor storage areas of miscellaneous equipment, obsolete tooling, and/or miscellaneous materials (e.g., scrap metal), to ensure that the tarps are in place, intact, in good condition and preventing the exposure of pollutant sources to precipitation. The inspection shall take place as part of daily housekeeping activities and before it rains. All tarps shall be repaired or replaced as necessary to prevent exposure of pollutant sources to precipitation.

      f.    <u>Secondary Containment</u>. Defendant agrees to store all petroleum-based materials and wastes and all concrete additives and coloring agents that could come into contact with rainfall or runoff within secondary containment having a volume at least 110 percent (110%) of the contents of the largest vessel stored within the containment.

      g.    <u>Roof Drain Rerouting</u>. Within forty-five (45) days of the Effective Date, Defendant shall use best efforts to work cooperatively with the operator of the neighboring facility on the West side of the Brazil Street Facility to reroute roof drain downspouts at the Facility to discharge onto Brazil Street.

      h.    <u>Eliminating Run-On</u>. Defendant shall use best efforts to work cooperatively with the operator of the neighboring facility on the West side of Brazil Street to divert run-on of storm water from the neighboring facility on the West side of the Brazil Street Facility, including drainage from downspouts and drainage between concrete blocks, with a berm or curbing. Because any effort to eliminate run-on from the neighboring property will impact, and requires the cooperation of, the neighboring property, it will be subject to the neighboring property owner's approval and cooperation.

    14.    Advanced BMPs for Brazil Street Facility:

      a.    <u>Storm Water Retention</u>. Defendant shall maintain and/or improve the storm water storage and recycling system that includes a combination of surface basins and/or subsurface tanks and is designed to contain 110 percent (110%) of the storm water

runoff volume associated with the eighty-fifth (85th) percentile storm event )"Storm Water Retention Plan"(.

   b.   No later than November 1, 2018, Defendant shall submit to Plaintiff for review and comment the Storm Water Retention Plan for the Brazil Street Facility. The Storm Water Retention Plan shall, at a minimum, specify: (1) the drainage area contributing to the retention system; (2) the storm runoff volume in cubic feet; (3) the retention system location(s), inlet(s), plan(s) and elevation view(s) with dimensions, volume, and outlet; (4) the option to pump and move water to other sites; (5) any discharge location in the event the system capacity is exceeded and a discharge would be imminent; and (6) an implementation date not later than December 1, 2018.

   c.   Plaintiff shall have fifteen (15) days from receipt to provide comments on the proposed Storm Water Retention Plan to Defendant.

   d.   Within seven (7) days of receipt of comments from Plaintiff, Defendant shall incorporate Plaintiff's comments into the Storm Water Retention Plan, or justify in writing why any comment is not incorporated.

   e.   Any disputes about the Storm Water Retention Plan shall be resolved pursuant to the dispute resolution procedures set out in Section IV, below.

   f.   The SWPPP shall be revised to incorporate the Storm Water Retention Plan within thirty (30) days of receiving comments from Plaintiff on the Storm Water Retention Plan.

   g.   The Storm Water Retention Plan developed and implemented pursuant to this Consent Decree is an obligation of this Consent Decree.

   15.   Structural and Non-Structural BMPs for Firestone Boulevard Facility: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Firestone Boulevard Facility:

   a.   <u>Sweeping</u>. Institute a daily sweeping program using a wet/dry vacuum sweeper, covering all exterior areas of the Firestone Boulevard Facility exposed to rainfall or runoff and accessible to the sweeper. To document compliance with this

paragraph, Defendant shall institute an established sweeping route map to be followed during daily sweepings, record the length of time of sweeper operation, and shall provide these records to Plaintiff within fourteen (14) days of receipt of a written request.

b. <u>Vehicle Maintenance</u>. Defendant agrees to conduct all vehicle and equipment maintenance inside the Maintenance Shop.

i. <u>Exception</u>. For maintenance of any vehicles and/or equipment that do not physically fit inside the Maintenance Shop, Defendant agrees to conduct such maintenance (1) only during days without any precipitation; and (2) in a contained area, i.e. where any non-storm water flow will be captured by secondary containment.

c. <u>Vehicle Fueling</u>. Any outdoor vehicle fueling will be conducted in a covered or contained area, i.e., an area where any storm water runoff or non-storm water flow will be captured with secondary containment.

d. <u>Vehicle Storage</u>. Place drip mats beneath trucks and other Firestone Boulevard Facility equipment likely to spill or leak while such equipment is not under cover and is idle for more than one hour. During or immediately before a storm event, drip mats shall be placed beneath trucks and other Firestone Boulevard Facility equipment likely to spill or leak that are either not under cover or are idle for more than one hour.

e. <u>Secondary Containment</u>. Defendant agrees to store all petroleum based materials and wastes and all concrete additives and coloring agents that could come into contact with rainfall or runoff are stored within secondary containment having a volume at least 110 percent (110%) of the contents of the largest vessel stored within the containment.

f. <u>Discharge to Branyon Avenue</u>: Defendant shall install a system of berms or other BMPs to eliminate the discharge onto Branyon Avenue.

g. <u>Discharge to Alley</u>: Upon the Effective Date, Defendant shall implement and maintain drainage controls to eliminate the discharge of storm water to

the alley way on the west side of the Firestone Boulevard Facility except at the designated discharge sample location as documented on the Site Map, which is Exhibit B in Docket Entry No. 23-1 in the Brazil Street Facility Action.

16.     Advanced BMPs for Firestone Boulevard Facility:

a.     Storm Water Retention. Defendant shall develop a water storage and recycling system that includes a combination of surface basins and/or subsurface tanks and is designed to contain 110 percent (110%) of the storm wate runoff volume associated with the 85th percentile storm event )"Storm Water Retention Plan"(.

b.     No later than December 1, 2018, Defendant shall submit to Plaintiff for review and comment the Storm Water Retention Plan for the Firestone Boulevard Facility. The Storm Water Retention Plan shall, at a minimum, specify: (1) the drainage area contributing to the retention system; (2) the storm runoff volume in cubic feet; (3) the retention system location(s), inlet(s), plan(s) and elevation view(s) with dimensions, volume, and outlet; (4) the option to pump and move water to other sites; (5) any discharge location in the event the system capacity is exceeded and a discharge would be imminent; and (6) an implementation date not later than January 1, 2019.

c.     Plaintiff shall have fifteen (15) days from receipt to provide comments on the proposed Storm Water Retention Plan to Defendant.

d.     Within seven (7) days of receipt of comments from Plaintiff, Defendant shall incorporate Plaintiff's comments into the Storm Water Retention Plan, or justify in writing why any comment is not incorporated.

e.     Any disputes about the Storm Water Retention Plan shall be resolved pursuant to the dispute resolution procedures set out in Section IV, below.

B.     Sampling at the Facilities.

17.     Rain Gauge: The Settling Parties agree that the existing rain gauge at the following existing, non-National Ready Mix Concrete Company locations can be referred to for purposes of this Consent Decree: GHCND:USW00023174.

18.     Sampling Locations and Frequency: During the life of this Consent Decree,

Defendant shall collect samples of storm water discharge from Discharge Locations at the Facilities, as designated on the Site Maps identified as Exhibits A and B in Docket Entry No. 23-1 in the Brazil Street Facility Action, in the event that discharges occur during the Facilities' operating hours[1] from at least four (4) qualified storm events as required by the Storm Water Permit (i.e., two QSEs within the first half of each reporting year and two QSEs within the second half of each reporting year). A qualified storm event, or "QSE" is a storm event that produces a discharge from a least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. Any failure to collect sample as required by this Consent Decree shall be documented and submitted to Waterkeeper by email within five (5) days of the date a sample should have been collected but was not. If, however, prior to November 1 Defendant has not collected a sample from a storm water discharge resulting from a QSE at the Facilities during the first half of the Reporting Year,[2] Defendant shall collect a sample from a storm water discharge resulting from at least one (1) non-QSE during operating hours. If prior to March 1 Defendant has not collected a sample from a QSE at the Facilities during the second half of the Reporting Year, Defendant shall collect a sample from a storm water discharge resulting from at least one (1) non-QSE during operating hours. To satisfy the requirements of this Consent Decree, samples collected during non-QSEs must have been collected during storm events that occurred at least 24 hours after a discharge but not more than 48 hours after a discharge; Defendant shall also collect samples of any discharge of retained storm water before discharging it, or at the time of the discharge.

19. Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed for the parameters listed in Table 1 of Paragraph 27.

20. Laboratory: Defendant shall use a laboratory accredited by the State of California and shall analyze all samples collected pursuant to this Consent Decree,

---

[1] According to each of the Facilities' SWPPP, the scheduled operating hours are Monday through Friday 5:30 a.m. to 5:00 p.m., and Saturday from 6:00 a.m. to 12:00 p.m.

[2] The Reporting Year is defined as July 1 through June 30.

excepting pH which will be analyzed onsite using pH paper.

21. Holding Time: All samples collected from the Facilities shall be delivered to the laboratory and analyzed within the holding times required in 40 C.F.R. Part 136, excepting pH which will be analyzed onsite using pH paper.

22. Detection Limit: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the Storm Water Permit and Table 1 below.

23. Concentrations: Defendant shall request that results of all sample analyses required by this Consent Decree for metals be reported as required under the Storm Water Permit.

24. Lab Reports: Defendant shall request that the results of all sample analyses required by this Consent Decree and associated chain of custody forms be reported to Defendant as soon as reasonably possible without incurring any "rush" charges or additional fees.

25. Reporting: Defendant shall provide the complete laboratory results of all samples collected at the Facilities to Waterkeeper within ten (10) days of receiving the results.

26. Sampling Reduction. Defendant may discontinue analyzing storm water samples collected pursuant to this Consent Decree at any discharge location(s) for a constituent listed in Table 1 of paragraph 27 if: (a) the sample result for the constituent(s) is not detected for three (3) consecutive sample results, (b) Defendant has collected and analyzed the sample pursuant to this Consent Decree and the Storm Water Permit, and (c) that constituent is not otherwise required to be analyzed pursuant to Section XI(B)(6) or Table 1 of the Storm Water Permit.

C. Reduction of Pollutants in Discharges

27. Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facilities to levels below those in Table 1. As of the Effective Date, and for the remainder of the term of this Consent Decree, if storm

water samples demonstrate an exceedance of a numeric limit in Table 1 in a single Reporting Year, Defendant shall comply with the action plan requirement set forth below.

**Table 1. Numeric Limits**

| Contaminant | Numeric Limit (All but pH expressed as mg/L; hardness-dependent limits in bold) |
|---|---|
| Total Suspended Solids | 100 |
| Oil and Grease (O&G) | 15 |
| Total Recoverable Aluminum | 0.75 |
| Nitrate Plus Nitrite-Nitrogen | 0.68 |
| Total Recoverable Iron | 1.0 |
| Total Recoverable Zinc | **0.26** |
| Total Recoverable Lead | **0.262** |
| Total Recoverable Copper | **0.0332** |
| pH | 6.5 to 8.5 s.u. |

28.    Action Plan for Table 1 Exceedances: In any Reporting Year during which A sample demonstrates an exceedance of numeric limits in Table 1, Defendant shall prepare and submit to Waterkeeper a plan for reducing and/or eliminating the discharge of pollutants ("Table 1 Action Plan") for the Facility or Facilities at which the exceedance(s) occurred. In any Reporting Year that a Table 1 Action Plan is required, it shall be submitted ninety (90) days from Defendant's receipt of a storm water sample lab report demonstrating an exceedance of a numeric limit or by June 30 of the Reporting Year during which the exceedance(s) occurred, whichever is earlier.

a.    Table 1 Action Plan Requirements. Each Table 1 Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming

Reporting Year. Defendant shall notify Waterkeeper in writing when the Table 1 Action Plan has been implemented.

b. <u>Table 1 Action Plan Review</u>. Waterkeeper shall have thirty (30) days upon receipt of Defendant's Table 1 Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving Waterkeeper's proposed revisions, Defendant shall consider each of Waterkeeper's recommended revisions to a Table 1 Action Plan(s), and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of the Table 1 Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c. <u>Table 1 Action Plan Payments</u>: Defendant shall pay one-thousand five hundred dollars ($1,500) each time an Action Plan is submitted to Waterkeeper. Payments shall be made payable to "Los Angeles Waterkeeper" addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

D. <u>Visual Observations</u>.

29. Storm Water Discharge Observations: During the life of this Consent Decree, Defendant shall conduct visual observations during Facilities operating hours during every rain event that produces a discharge at all locations where storm water is discharged from the Facilities.

30. Non-Storm Water Discharge Observations: During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each discharge location.

31. Visual Observations Records: Defendant shall maintain observation records to document compliance with paragraphs 29 and 30, and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request from

Waterkeeper for the records.

E.   Employee Training.

32.   Employee Training Program: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facilities designated to achieve compliance with the Storm Water Permit and this Consent Decree )"Designated Employees"(, and (2) that these Designated Employees are properly trained to perform the activities required by the Storm Water Permit and this Consent Decree )"Training Program"(:

a.   Language. Defendant shall conduct the Training Program in the language or languages in which all Designated Employees are fluent;

b.   BMP Training. Defendant shall train Designated Employees on the BMPs included in this Consent Decree and the SWPPP to ensure that BMPs are implemented effectively and on schedule and structural BMPs are maintained properly at the Facilities. Defendant shall train individual Designated Employees on their specific responsibilities in implementing BMPs;

c.   Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree. The Training Program shall include the proper sampling protocols to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory;

d.   Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees performing visual observations at the Facilities;

e.   Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facilities on the Storm Water Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges;

f. <u>Employees</u>. All Designated Employees at the Facilities shall participate in the Training Program and annually thereafter. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

g. <u>Knowledgeable Representative</u>. The Training Program shall be provided by a private consultant or representative of Defendant's who is Qualified Industrial Stormwater Practitioner )"QISP"( certified and familiar with the requirements of this Consent Decree and the Storm Water Permit;

h. <u>Training Records</u>. Defendant shall maintain training records to document compliance with this section, and shall provide Plaintiff with a copy of these records within fourteen (14) days of receipt of a written request; and

i. <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>. Within thirty (30) days of the Effective Date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling, and SWPPP implementation.

33. SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update: Within thirty (30) days of the Effective Date, Defendant shall amend the Facilities' SWPPPs and MIPs to incorporate the requirements in this Consent Decree. Defendant agrees to submit the updated SWPPPs and MIPs to Waterkeeper upon completion for review and comment.

a. <u>Review of SWPPP and/or MIP</u>. Waterkeeper shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of Waterkeeper's comments and proposed changes and accept them, or justify in writing why a change is not incorporated.

b. Defendant shall revise the SWPPP and MIP if there are any material changes in the Facilities' operations, including, but not limited to, changes to storm water discharge points or BMPs within thirty (30) days of the changes, which will be subject to Waterkeeper's review and comment as provided in paragraph 33(a) above.

c. The Settling Parties agree to work in good faith with respect to resolving any disputes with respect to the SWPPP or MIP, and that any remaining disputes between the Settling Parties will be finally resolved by timely initiation of the dispute resolution procedures in Section IV below.

d. Compliance with the SWPPP and MIP, as amended and/or revised in accordance with this section, shall, at all times be a requirement of this Consent Decree. Nothing in this paragraph allowing Waterkeeper to review and comment on Defendant's SWPPP and MIP is intended to allow Waterkeeper to seek to modify Defendant's obligations to implement and maintain additional BMPs that have not been negotiated and included in this Consent Decree, or to otherwise modify the terms and conditions of this Consent Decree.

F. Compliance Monitoring and Reporting.

34. Waterkeeper Site Inspections: Every year during the life of this Consent Decree, up to three (3) Waterkeeper representatives and/or consultants (including an attorney) may conduct one (1) physical inspection )"Site Inspection"( per year of each of the Facilities, except in the event there is a Notice of Dispute issued under paragraph 41(a), then Plaintiff shall be permitted to perform one (1) additional Site Inspection in that Reporting Year. The Site Inspection shall occur during normal business hours. Waterkeeper shall provide Defendant with as much notice as possible, but at least forty-eight (48) hours notice prior to a Site Inspection in anticipation of wet weather (weekends and holidays excluded) and seventy-two (72) hours notice during dry weather (weekends and holidays excluded). Notice shall be provided by telephone and electronic mail, and shall state the names of all persons whom Waterkeeper will bring to the inspection.

a. During the Site Inspections, Waterkeeper and/or its representatives shall be allowed access to the Facilities' SWPPP(s), MIP, and all other monitoring records, reports, and sampling data for the Facilities. Defendant claims that some information may contain confidential business and/or trade secret information, and as

such, Plaintiff agrees that such confidential business and/or trade secret information obtained by Waterkeeper from Defendant as a result of or in connection with a Site Inspection shall be maintained as confidential, subject to the Confidentiality Agreement executed in this matter, an unexecuted copy of which is Exhibit C in Docket Entry No. 23-1 in the Brazil Street Facility Action. Such confidential business and/or trade secret information shall not be disclosed to any third party, except that such information can be presented to the Court to enforce compliance with this Consent Decree. Defendant shall bear the burden of demonstrating that information is a confidential business and/or trade secret. Site Inspections will be limited to a visit of the areas exterior to the buildings on site, and will not include access to the interior of the buildings at the Facilities or observation into the buildings from the exterior. Defendant reserves the right to limit or define physical site access as needed to accommodate safety or operational issues.

b. During the Site Inspections, Defendant shall allow Waterkeeper and/or its representatives to collect split samples of storm water, non-storm water discharges, and/or samples from any infiltration galleries or treatment systems, if applicable, at the Facilities. Waterkeeper and/or its representatives shall follow all sampling protocols specified in the MIP, including, but not limited to sample preservation, chain of custody maintenance, sterile sampling techniques, prevention of cross-contamination, etc. Waterkeeper and/or its representatives shall not analyze for any constituents that National does not analyze for and shall adhere strictly to the analyses specified in the MIP including, but not limited to, method numbers, quality assurance/quality control procedures, method detection limit goals, and practical quantitation limit goals. Sample splits collected by Waterkeeper and/or its representatives shall be exact splits of samples collected by National staff and/or its representatives, in that they will be taken from a batch collected by one sampler, mixed thoroughly, with one aliquot from the batch taken by National and one aliquot from the batch taken from Waterkeeper for separate analyses. Waterkeeper and/or its representatives shall adhere to all health and safety requirements of National as set forth in the MIP. Waterkeeper and/or

its representatives shall use all personal protective equipment necessary to protect from identified and potential hazards and meet all requirements of OSHA, Cal-OSHA, and National. National reserves the right to refuse entry or the collection of samples should health and safety procedures being proposed or followed by any third party not adhere to National standards and all applicable codes and regulations. A certified California laboratory shall analyze any storm water samples collected by Waterkeeper. Waterkeeper shall submit the name, address, manager/contact person, and NELAPs certification for the analyses to be conducted to National no later than one week prior to the inspection during which sample splits are anticipated to be collected. Should Waterkeeper change laboratories, it shall submit the name, address, manager/contact person, and NELAP certifications for the analyses to be conducted to National no later than one week prior to the inspection during which sample splits are anticipated to be collected.

       c.    During the Site Inspections, Waterkeeper may take photographs or video recording of the Facilities except for such information that contains confidential business and/or trade sectret information. If Waterkeeper takes any photographs and/or video recording, Waterkeeper shall provide Defendant with the photographs and/or video within fourteen (14) days after any written request by Defendant for such photographs and/or videos.

       35.    Document Provision: During the life of this Consent Decree, Defendant shall notify and submit documents to Waterkeeper as follows:

       a.    Defendant shall copy Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facilities that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality.

       b.    Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facilities

received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, or municipality shall be sent to Waterkeeper within three (3) business days of receipt by Defendant. Defendant shall mail paper copies or email electronic copies of documents to Waterkeeper at the relevant notice address contained below.

       c.   Waterkeeper agrees to not seek a penalty under paragraph 39 below for Defendant's missed deadline to submit a document to Waterkeeper if:

           i.   Defendant does not miss more than one (1) deadline in a one (1) month period, or more than four (4) missed deadlines over the course of this Consent Decree, and

           ii.   Waterkeeper receives the document(s) within five (5) business days of Defendant's submittal or receipt of the document(s).

36.   Compliance Monitoring and Oversight: Defendant shall pay Nine Thousand Dollars ($9,000) to compensate Waterkeeper for costs and fees to be incurred for monitoring Defendant's compliance with this Consent Decree. Payment shall be made within fifteen (15) days of the Effective Date payable to "Los Angeles Waterkeeper," addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401, and sent via courier or overnight delivery. Failure to submit payment as required under this paragraph will constitute a breach of the Consent Decree.

       G.   <u>Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest.</u>

37.   Environmental Mitigation Project: To remediate the alleged environmental harms resulting from allegations in the Complaints, Defendant agrees to make a payment of Forty-Seven Thousand Five Hundred Dollars ($47,500) to The Rose Foundation for Communities and the Environment to fund environmental project activities that will benefit Southern California waters. The payments shall be made within thirty (30) days of the Effective Date payable to The Rose Foundation for Communities and the Environment and addressed to: Attn: Tim Little, 201 4th Street, Suite 102, Oakland,

California 94607. Defendant shall provide Waterkeeper with a copy of such payment.

38. Waterkeeper's Fees and Costs: To partially reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuits and negotiating this Consent Decree, Defendant shall pay a total of One Hundred Ten Thousand Dollars ($110,000). The payment shall be made within ten (10) days of the Effective Date payable to "Los Angeles Waterkeeper" and addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401.

39. Stipulated Penalties: Defendant shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in this Consent Decree or the failure to collect a storm water sample required under this Consent Decree after the Effective Date. Stipulated penalty payments shall be made payable to The Rose Foundation for Communities and the Environment and addressed to: Attn: Tim Little, 201 4th Street, Suite 102, Oakland, California 94607. Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline or failure to sample. Defendant shall provide Waterkeeper with a copy of each such payment at the time it is made.

40. Interest on Late Payments: Defendant shall pay interest on any payments, fee, or costs owed to Waterkeeper under this Consent Decree that Waterkeeper has not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be compute at a rate of 1.5% per month (18% per year). Interest on late payments shall be made payable to Waterkeeper and sent to the address listed in paragraph 61, below.

IV. DISPUTE RESOLUTION

41. The Court shall retain jurisdiction over this matter for the life of the Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of the Consent Decree. The Court shall have the authority to enforce this Consent Decree with all

available legal and equitable remedies, including contempt.

42.     If a dispute under this Consent Decree arises or the Settling Parties believe that a breach of this Consent Decree has occurred, they shall follow the following procedure:

a.     Meet and Confer. A Settling Party invokes the dispute resolution procedures of this Section by notification in writing to the other Settling Party of the matter(s) in dispute and of the Settling Party's desire to resolve the dispute in good faith under this Section ("Notice of Dispute"). The Settling Parties shall schedule a meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of  fourteen (14) calendar days from the date of the Notice of Dispute. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention;

b.     Settlement Conference. If the Settling Parties fail to meet and confer or cannot resolve a dispute through the informal meet and confer process, the Settling Parties agree to request a settlement meeting or conference before the Magistrate Judge assigned to this action. The Settling Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement meeting or conference;

c.     Motion. In the event that the Settling Parties cannot resolve the dispute within sixty (60) days of the Settlement Conference with the Magistrate Judge, the Settling Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

43.     The Settling Parties shall be entitled to seek fees and costs incurred in the informal and formal Dispute Resolution process described in this section pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.  MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

44.  Plaintiff's Waiver and Release of Defendant: Plaintiff, on its own behalf, and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns, release Defendant, its officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims raised in the Notice Letters and/or the Complaints up to the Effective Date.

45.  Defendant's Waiver and Release of Plaintiff: Defendant, on its own behalf, and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, releases Plaintiff and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waives all claims related to the Notice Letters and/or the Complaints up to the Effective Date.

46.  Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Water Board, Regional Water Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.  MISCELLANEOUS PROVISIONS

47.  No Admission of Liability: Neither this Consent Decree, the implementation of additional BMPs, or any payment pursuant to the Consent Decree shall constitute or be construed as a finding, admission, or acknowledgement of any fact, law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

48.  Execution in Counterparts: The Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a pdf signature, and/or facsimile copies of original signature shall be

deemed to be originally executed counterparts of this Consent Decree.

49. Signatures: The Settling Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

50. Construction: The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

51. Authority to Sign: The undersigned representatives for Plaintiff and Defendant each certify that he/she is fully authorized by the Settling Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

52. Integrated Consent Decree: This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations and warranties, express or implied, oral or written, of the Settling Parties concerning the subject matter of this Consent Decree.

53. Severability: In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

54. Choice of Law: This Consent Decree shall be governed by the laws of the United States.

55. Full Settlement: This Consent Decree constitutes a full and final settlement of this matter.

56. Diligence: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all structural BMPs by the required deadlines.

57. Effect of Consent Decree: Compliance with this Consent Decree does not mean Defendant is complying with the Storm Water Permit, the Clean Water Act, or any

other law, rule, or regulation.

58.   Negotiated Agreement: The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

59.   Modification of the Agreement: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged, or terminated unless by a written instrument, signed by each of the Settling Parties and approved by the Court. Any request to modify any provision(s) of the Consent Decree, including but not limited any deadline(s) set out herein, must be made in writing at least fourteen (14) business days before an existing deadline(s) applicable to the provision(s) proposed to be modified.

60.   Assignment: Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment, in conformity with the paragraph below.

61.   Notices and Submissions: Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Plaintiff pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Arthur Pugsley
Los Angeles Waterkeeper
Email: arthur@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401

With copies to:

Bruce Reznik
Executive Director
Email: bruce@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401

Unless requested otherwise by Defendant, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Defendant pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

Steve Lode
National Ready Mixed Cement Company
Email: slode@natcem.com
15821 Ventura Boulevard # 475
Encino, CA 91436

With copies to:

Michael S. McDonough
Pillsbury Winthrop Shaw Pittman LLP
Email: michael.mcdonough@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

62. Deadlines Falling on Non-Business Days: Any deadlines relating to this Consent Decree which fall on the weekend or on a federal holiday shall be extended to the following business day.

63. Force Majeure: No Party shall be considered to be in default in the

performance of any of its obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; unexpected and unintended accidents not caused by National's or its employees' negligence; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence or misconduct. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the force majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any force majeure event.

The Settling Parties hereto have entered into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

**IT IS SO ORDERED.**

DATED:  January 3, 2019

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE